**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-01301-SKC

JESUS OCHOA,

      Plaintiff,

v.

DEAN WILLIAMS in his official capacity as
Executive Director of Colorado Department of Corrections,

      Defendant.

---

**ORDER RE: DEFENDANT'S MOTION TO DISMISS [#25] and**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#26]**

---

      This Order addresses Defendant's Motion to Dismiss (the "Motion") [#25].[1] The Court has reviewed the Motion and the related briefing.[2] No hearing is necessary. For the reasons stated herein, the Court GRANTS the Motion. In light of this Order, Defendant's Motion for Summary Judgement [#26] is DENIED as moot.

## A.      BACKGROUND

      Plaintiff Jesus Ochoa is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") and is subject to its Administrative Regulations ("AR"). The Court accepts the following well-pleaded facts as true and views the allegations in

---

[1] The Court uses" [#__]" to refer to entries in the CM/ECF Court filing system.
[2] Defendant did not file a reply.

the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Moreover, Plaintiff appears *pro se*. Accordingly, the Court construes the Second Amended Complaint ("SAC")[3] and Plaintiff's pleadings liberally but without acting as his advocate. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

This matter arises out of Plaintiff's inability to communicate with his mother, Barbara Ochoa, during his incarceration. Ms. Ochoa was initially charged as a co-defendant in Plaintiff's criminal case. [#9, ¶3.] The charges against Ms. Ochoa were eventually dismissed. The CDOC's AR 300-01[4] ("the AR") restricts visitation and communication between co-defendants. [*Id.*] Based on AR 300-01, the CDOC has denied Plaintiff the ability to communicate with his mother because she was a co-defendant in his criminal case.

Plaintiff alleges the AR is unconstitutional because it defines co-defendant as "[a]ny individual that was involved in or charged with a crime committed by the

[3] Plaintiff filed a *pro se* complaint in the El Paso County District Court on February 14, 2020 and an Amended Complaint on April 8, 2020. [#4.] Defendant removed this action to federal court because Mr. Ochoa asserts a federal constitutional claim. [#1.] Mr. Ochoa filed the SAC pursuant to Magistrate Judge Gallagher's order [#7], which became the operative complaint. [#9.]

[4] The SAC identifies the AR at issue as "300-10." This appears to be a typo because the AR attached to the Motion is identified as AR 300-01. [#25-1.] Accordingly, the Court refers to AR 300-01. Moreover, a court may consider documents outside the complaint without converting a motion to dismiss to a motion for summary judgment where, as here, the document is central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

offender he/she is requesting to visit." [#25-1, p.1.] Plaintiff alleges the co-defendant definition "demeans Ms. Ochoa's innocence" and "places liabilities upon an accused party irrespective of a dismissal of one's right to be presumed innocent until proven guilty." [*Id.* ¶¶5,6.]

Plaintiff brings the present suit under Section 1983 alleging the AR violates the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article II, Sections 16 and 26 of the Colorado Constitution.[5] [*Id.* p.2.] The SAC contains a singular claim in the form of a question, whether "Defendant's Administrative Regulation is unconstitutional." [*Id.* p.4.] In support of that question, Plaintiff alleges the AR's definition of "co-defendant" inflicts undue prejudice on the Ochoa family without due process of law and that other similarly situated inmates enjoy companionship with their mothers. [*Id.* ¶¶5,7.] As relief, Plaintiff seeks an order directing the Defendant to amend the AR. [*Id.* p.6.]

Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(1) arguing Plaintiff lacks standing and, alternatively, under 12(b)(6) for failure to state a claim. [#25.] Defendant also filed a Motion for Summary Judgement arguing Plaintiff failed to exhaust administrative remedies. [#26.] This Order addresses both motions.

## B.   LEGAL PRINCIPLES

---

[5] While Plaintiff cites to Section 26 of the Colorado Constitution, the Court notes that section pertains to the prohibition against slavery. Colo. Const. art. II, § 26. The Court construes this to be a drafting error and that Plaintiff intended to invoke Section 25 pertaining to due process of law.

I.      12(b)(1)

"[T]he party invoking federal jurisdiction bears the burden of proof." *Marcus v.*
*Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999). Under Rule 12(b)(1)
of the Federal Rules of Civil Procedure, a motion to dismiss may be granted if the
court lacks subject matter jurisdiction. The determination of subject matter
jurisdiction is a threshold question of law. *Madsen v. United States ex. rel. United*
*States Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). The court
applies a rigorous standard of review when presented with a motion to dismiss for
lack of subject matter jurisdiction. *Consumers Gas & Oil, Inc. v. Farmland Indus.*
*Inc.*, 815 F. Supp. 1403, 1408 (D. Colo. 1992).

"Motions to dismiss pursuant to Rule 12(b)(1) may take two forms." *Amoco*
*Production Co. v. Aspen Group*, 8 F. Supp.2d 1249, 1251 (D. Colo. 1998). First, a party
may attack the facial sufficiency of the complaint and the court must accept the
allegations of the complaint as true. *Id.* Second, a party may attack the factual
assertions regarding subject matter jurisdiction through affidavits and other
documents; the court "has wide discretion to allow affidavits, other documents and a
limited evidentiary hearing to resolve disputed jurisdictional facts under Rule
12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The Motion
appears to launch a factual attack, wherein the Court has discretion to consider
matters outside the pleadings without converting the Motion to one for summary
judgment. *Id.*

## II.     12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly-Iqbal* pleading standard requires that courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id.* If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then

the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,1252 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## C.   DISCUSSION

### I.   Standing

Standing is a jurisdictional prerequisite properly brought under Fed. R. Civ. P. 12(b)(1). *Hill v. Vanderbilt Capital Advisors*, LLC, 702 F.3d 1220, 1224-25 (10th Cir. 2012). Article III of the Constitution permits federal courts to decide "cases" or "controversies." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III standing requires the plaintiff to have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). At the pleading stage, the plaintiff must clearly allege facts demonstrating each element. *Id.* at 1547. The party invoking federal jurisdiction bears the burden of establishing standing. *Id.*

Defendant argues Plaintiff lacks standing to bring a claim that the AR violates his mother's right to a presumption of innocence. [#25, p. 7.] Plaintiff counters he has standing to bring this matter because; (1) he is a "client-resident contractually bound to, with interest in CDOC's Administrative Regulations," (2) "'Defendant's Motion to Stay Discovery . . .' explicitly recognizes the Plaintiff has an interest in these proceedings," and (3) "a litigant seeking declaratory relief (even under §1983) has a procedurally inherent standing to seek a Court's review of policies, personally considered to be unconstitutional." [#37, pp.1-2.]

This case primarily concerns the doctrine's first element – injury in fact. To establish injury in fact, a plaintiff must show he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). Here, Plaintiff alleges the AR violates his mother's presumption of innocence. [#9, ¶5.] A Section 1983 claim must be based upon a violation of a plaintiff's personal rights, not the rights of someone else. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). To the extent Plaintiff attempts to assert a claim on his mother's behalf alleging the AR violates her constitutional rights, he does not have standing to do so. Accordingly, the Court GRANTS Defendant's Motion pursuant to Rule 12(b)(1) as it pertains to any claims Plaintiff alleges on his mother's behalf.

In liberally construing the SAC, the Court concludes Plaintiff has standing to assert claims based on a deprivation of his own First and Fourteenth Amendment

Constitutional rights. As such, the Motion is DENIED insofar as the SAC asserts a Section 1983 claim based on a deprivation of Plaintiff's own constitutional rights. The Court, therefore, addresses whether the SAC plausibly alleges claims sufficient to withstand dismissal under Rule 12(b)(6).

## II.   Fourteenth Amendment

The Fourteenth Amendment provides no state shall "deprive any person of life, liberty, or property, without due process of law." *Est. of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1339 (10th Cir. 2007). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id*. (quoting *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005)).

### a.   *Substantive Due Process*

The right to familial association is a substantive due process right grounded in the Fourteenth Amendment. C*ordova v. City of Albuquerque*, 816 F.3d 645, 654–55 (10th Cir. 2016) (internal quotations omitted); *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993). In describing this constitutionally protected liberty interest, the Supreme Court recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State." *Trujillo v. Board of County Com'rs of Santa Fe County*, 768 F.2d 1186, 1188 (10th Cir. 1985) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). Included in

that category are family relationships, which by their nature, involve deep attachments and commitments distinctly personal to aspects of one's life. *Id.*

To prevail on a familial association claim, a plaintiff must make two showings: (1) that the defendant "intended to deprive [him] of [his] protected relationship," and (2) in balancing the individual's interest in the protected familial relationship against the state's interests in its actions, defendant either "unduly burdened plaintiff['s] protected relationship, or effected an unwarranted intrusion into that relationship." *Cordova*, 816 F.3d at 654 (quoting *Thomas v. Kaven,* 765 F.3d 1183, 1196 (10th Cir. 2014). But "not every statement or act that results in an interference with the right of familial association is actionable. The conduct or statement must be directed at the familial relationship with knowledge that the statements or conduct will adversely affect that relationship." *Id.* Put differently, to satisfy the first prong of the test, a plaintiff must allege the defendant had the "intent to interfere" with a particular protected relationship. *Id.* at 654-55; *see also Trujillo,* 768 F.2d at 1190.

In conducting the balancing required by the second prong, "the court will consider, among other things, the severity of the infringement on the protected relationship, the need for defendants' conduct, and possible alternative courses of action." *Id.* at 655 (quoting *Thomas,* 765 F.3d at 1196).

Here, Plaintiff's allegations fail to satisfy the first prong because he alleges no facts indicating the AR was directed at his familial relationship with his mother.

Indeed, the SAC alleges the AR's "inadvertent" application to individual's "charged" with crimes as co-defendants, rather than applying only to those "convicted" of those crimes, results in a deprivation of constitutional rights. [#9, ¶6.] Even giving the SAC a liberal construction, it fails to plausibly allege the AR is directed at familial relationships, Plaintiff's relationship with his mother, or that the intent of the AR is to deprive Plaintiff (or other incarcerated persons) of his familial relationship. On its face the AR applies to "co-defendants" involved in or charged with a crime committed by the offender they seek to visit. That the charged co-defendant in this case happens to be Plaintiff's mother is unfortunate, but her familial status alone does not render the AR unconstitutional without factual allegations plausibly setting forth the requisite intent of the AR.

Because Plaintiff has failed to plausibly allege facts satisfying the first prong, the Court does not consider the second prong. Defendant's Motion as it pertains to Plaintiff's substantive due process claim is GRANTED, without prejudice.

### b.   *Procedural Due Process*

Plaintiff alleges the AR inflicts "(upon the Ochoa Family) undue prejudice without due process of law." [#9, ¶5.] The Court liberally construes this as a procedural due process claim. That is, Plaintiff alleges he has a liberty interest in communicating with his mother which the AR deprives without due process.

The Court examines procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered

with by the state; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

"[L]awfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled in part on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995). For prisoners, a liberty or property interest exists where interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 at 484.

Here, other than conclusory statements about his inability to visit with or receive phone calls from his mother, Plaintiff fails to plausibly allege a deprivation of a liberty or property interest. To the extent the Court construes these conclusory statements as allegations of a liberty interest in visitation and telephone calls,[6] Plaintiff has failed to plausibly allege how those restrictions impose "an atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." *Id*.

---

[6] The Court notes that since *Sandin*, the Tenth Circuit has consistently stated in unpublished opinions that restrictions on inmate visitation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life. *Cleveland v. Martin*, 590 Fed. App'x 726, 732 (10th Cir. 2014). The same is true to the extent Plaintiff alleges a liberty interest in speaking via telephone with his mother. *See Marshall v. Morton*, 421 Fed. App'x 832, 838 (10th Cir. 2011) ("restrictions on an inmate's *telephone use*, property possession, *visitation* and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute a protected liberty interest under the Due Process Clause.") (emphasis added).

Moreover, even if the Court cobbles together a liberty interest from these conclusory statements, Plaintiff fails to plausibly allege facts about the process he was afforded (if any) to challenge the restrictions on his communications with his mother to plausibly allege the process was constitutionally insufficient. *See, generally Wolff v. McDonnell*, 418 U.S. 539 (1974). He only summarily alleges he was deprived due process without alleging supporting facts to demonstrate the same. Accordingly, the Court GRANTS Defendant's Motion as it pertains to Plaintiff's procedural due process claim, without prejudice.

### c.   *Equal Protection Clause*

Plaintiff also alleges "other similarly situated inmates are permitted to enjoy companionship with their mother's." [#9, ¶7.] The Court liberally construes this allegation as an equal protection claim. The Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citing U.S. Const. amend. XIV). An equal protection violation occurs when the government treats someone differently than another who is similarly situated. *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).

As discussed above, the liberally-construed SAC alleges a constitutional right to familial association. This is a fundamental right, and as such, any interference with the right must shock the judicial conscience. *Halley v. Huckaby*, 902 F.3d 1136, 1154 (10th Cir. 2018). "Conduct that shocks the conscience is deliberate government

action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id.* (citing *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013)). The behavior complained of must be egregious and outrageous. *Id.* The Tenth Circuit in *Huckaby* clarified that the two-pronged test for familial association (discussed above) reflects these principles. Specifically, in determining whether Plaintiff has plausibly alleged the AR violates the equal protection clause, the inquiry is on whether the SAC alleges Defendant intended to burden the familial relationship and, if so, whether it was unduly burdensome or created an unwarranted intrusion on the plaintiff's right to familial association. *Id.* (citing *Thomas*, 765 F.3d at 1196).

As the Court previously concluded, Plaintiff has failed to plausibly allege facts showing the regulation was directed at his association with his mother, or that it was intended to burden his familial relationship. Thus, any alleged equal protection claim fails on this basis. Further though, Plaintiff has not alleged facts sufficient to plausibly allege egregious and outrageous behavior by Defendant in applying the AR to Plaintiff's mother, who was charged as a co-defendant in Plaintiff's criminal case. Accordingly, the Court concludes Plaintiff has failed to plausibly allege the AR violates the equal protection clause. Defendant's Motion as it relates to Plaintiff's equal protection claim is GRANTED without prejudice.

### d.    First Amendment[7]

---

[7] The First Amendment as incorporated through the Fourteenth Amendment applies to state action. *See generally Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010).

Correspondence between a prisoner and an outsider implicate the guarantee of freedom of speech under the First Amendment. *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Under the First Amendment, the Supreme Court has acknowledged "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)).

It also recognized, however, that courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform. *Id.* (internal quotation marks omitted). Accordingly, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Id.* (quoting *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989). In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (citing *Turner,* 482 U.S. at 89). In *Turner*, the Supreme Court identified several factors that are relevant to the reasonableness inquiry. *Thornburgh*, 490 U.S. at 414. In ruling on a Rule 12(b)(6) motion to dismiss, however, the Court need only address as a general matter whether the regulation is reasonably related to a legitimate penological interest. *Lewis v. Clark*, 663 F. App'x 697, 700–01 (10th Cir. 2016) (citing *Al–Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012)). Plaintiff has the burden to plead facts from

which a plausible inference can be drawn that the restriction was not reasonably related to a legitimate penological interest. *Id*.

The SAC fails in this regard. Specifically, it fails to allege the AR is not reasonably related to a legitimate penological interest, let alone any facts from which the same can be inferred. The Court, therefore, concludes that Plaintiff has failed to plausibly allege the AR violates the First Amendment. The Motion as it pertains to Plaintiff's First Amendment claim is GRANTED, without prejudice.

### D.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion. Plaintiff may file a Motion for Leave to File a Third Amended Complaint ("Motion for Leave"), accompanied by the proposed third amended complaint which cures the deficiencies discussed in this Order, no later than **July 1, 2021**. If Plaintiff fails to timely file a motion for leave, then without further notice to him, judgment will enter in favor of the Defendant, and this action will be dismissed.

Given this Order, Defendant's Motion for Summary Judgment [#26] is DENIED as MOOT. In the event Plaintiff files a Motion for Leave, the Court instructs Defendant to file a motion requesting an evidentiary hearing on the exhaustion issue raised in the Motion for Summary Judgment. *See Carbajal v. Keefer*, No. 12-CV-03231-PAB-KLM, 2017 WL 4297343, *8 (requiring an evidentiary hearing because the issue of exhaustion of administrative remedies is resolved by the court and not a

15

jury). Defendant shall file the motion within **<u>10 days</u>** of Plaintiff filing his Motion for

Leave, if any.

      SO ORDERED.

      Dated: June 11, 2021.

                     By the Court:

                     S. Kato Crews
                     U.S. Magistrate Judge